HILL *et al. v.* STAPLES *et al.*

BLECKLEY, C. J.—There was no abuse of discretion in denying the injunction prayed for. *Judgment affirmed.*
March 31, 1890.

Petition for injunction. Before Judge RICHARD H. CLARK. DeKalb county. At chambers, October 19, 1889.

Hill *et al.* alleged as follows : They have for the past four years been running a public cotton-gin for toll, and until January, 1889, another public gin was operated for toll within a quarter to a half-mile of petitioners' gin, with which it was run in competition and divided patronage. The capacity of petitioners' gin was sufficient to do the work of all the patrons within the range of the two; and wishing to secure all the patronage, and solely to prevent competition, the petitioners bought of the other owners their gin, press, scales, feeder and belting, and also their steam-engine used for running the gin, for $325, in January, 1889. In September, 1889, Staples proposed to purchase the gin, etc., which petitioners had bought in January. Petitioners informed him of the purposes for which they had bought it, and agreed, as they had no use for the outfit, that they would sell it to him, provided he would take it out of the reach of the patronage of their gin, and that it should not be set up nearer than two or three miles to theirs ; stating that if he would purchase on these terms, they would make a great discount on the price and make the terms of payment easy. He agreed to this, and they

sold the gin, etc. to him at $200. He moved the gin, etc. about two miles or further from petitioners' gin, in a different neighborhood from theirs, where he claimed in the purchase that he would locate it. Within a week or two, he told them that he wanted to sell the gin, etc. to other parties for $325. They reminded him of the terms of their trade with him, and told him they would not consent for him to sell if the purchasers wished to or should bring it nearer to them than he could under the terms of the purchase. He persisted in selling, and afterwards claimed that he had sold to Powell and his son-in-law, Brantley, both of whom knew, before they purchased, the terms on which the property had been sold to Staples, and that petitioners would not consent that it should be operated nearer than as above specified, but nevertheless have moved the gin, etc. back within a quarter of a mile of petitioners' gin, have set it up on the public highway and have been operating it for several days, soliciting public patronage within the neighborhood of petitioners' gin and cutting off a large portion of petitioners' patronage ; the injury to petitioners being difficult to ascertain, especially should Powell and Brantley continue to operate the gin at its present location or within the prohibited distance. If petitioners could get a judgment against Powell and Brantley for the damages, it could not be collected, because Powell and Brantley have but little property, all of which could be covered by them under the homestead and exemption laws. They are not the real owners, but are operating the gin, etc. under lease from Staples, the original trade made between them and Staples having been cancelled ; and the ginnery is now being run by them, in co-operation with Staples, in direct violation of the terms upon which it was sold to Staples. Petitioners pray for injunction against Staples, Powell and Brantley to prevent them

from operating the ginnery where it is now located, or within the distance agreed on by petitioners and Staples.

The defendant answered as follows: It is not true that there were any conditions as to the purchase by Staples, except as to the amount to be paid and the manner of payment; but after the sale had been consummated, one of the petitioners undertook to engraft some stipulations on the trade, and for that purpose approached a son of Staples and told him there was one thing they had forgotten in the trade, and that was that the gin was not to be run at the old stand, to which was replied, "It is too late now; the trade is made." Staples made no promises as to the gin and attachments being used anywhere within two miles, and petitioners only claimed that they sold the same to Staples because they had no use for them and they were deteriorating in value from lack of care and non-use. Staples first sold the gin, etc. to Powell, Brantley and two others, but they failed to consummate the trade; and thereupon he rented the gin, etc., as well as other machinery that had never belonged to petitioners, to Powell and Brantley to run at such place as they might see fit to use it. There is no collusion between Staples, Powell and Brantley·; if any damage has been done, Staples is responsible for it and is fully able to respond. He rented the machinery to Powell and Brantley free from all restrictions and as his property, which he had the right to do. At the time Powell and Brantley rented the machinery, they had already, under the terms of their contemplated purchase from Staples, gone to the expense of moving the machinery and setting it up and had built a house for it, and up to that time had no notice of any kind as to any secret stipulations between petitioners and Staples. They hold the machinery under the contract of renting, for three months, for $40. Petitioners never owned the cotton-press used by re-

spondents. Powell and Brantley have put up the gin in their own house, on their own land, and could have purchased or rented the machinery that they rented from Staples from other sources. They are using other machinery besides that which petitioners claim they sold to Staples, and other capital, and have contracted with an engineer to run their engine, and have more money invested in houses, labor, machinery, etc. than the value of all the machinery claimed to have been sold to Staples by petitioners. They are solvent and able to pay all damages that may be assessed against them.

On the hearing, the evidence for the petitioners tended to show that, before the machinery in question was rented by Powell and Brantley, they were notified of petitioners' claim as to the terms of the sale to Staples; that the purpose of the purchase of the property by petitioners were generally known in the neighborhood; that one of their vendors is a brother of Powell; that the sale by petitioners to Staples was upon the terms stated in the petition; that Staples admitted this to be true after the sale, proposed to go and see Powell and take back the machinery, went with petitioners and another to Powell and proposed to take back the machinery as he had been falsely informed about petitioners' sale of their present ginnery, but Powell refused to agree to let it be taken back, and was notified by petitioners that if he attempted to run the ginnery in their neighborhood they would not let him do so; that he asked who he would get damages from if the ginnery was stopped, and was told by one of the petitioners that he should look to Staples, and Staples told him he could not look to him for he then demanded the machinery; and that at this time but little work had been done by Powell about locating the ginnery. One affidavit was to the effect that, on or about September 28th,

1889, the affiant heard Powell and Brantley say that when they traded for the machinery, they knew all about the trade that was made between Staples and petitioners, and that they traded for it to bring it back in the settlement and break down petitioners in the gin business. The testimony for the respondents tended to show that it was only after the trade between petitioners and Staples had been made that petitioners undertook to affix to it the condition that the machinery was not to be run in competition with them.

The injunction was refused, and petitioners excepted.

J. N. Glenn, by brief, for plaintiffs.

J. S. Candler, for defendants.